Cohn v. Flanagan & Biedenweg Co., 195 Ill. App. 491.

was entered and at the time he became a bankrupt, Norton was the owner of the premises in question. After Norton was declared a bankrupt, Hooper purchased the premises from the trustee and took possession thereof, and thereupon the bank threatened to sell the same on the said execution in satisfaction of the said judgment, whereupon the bill was filed. While the court held that Hooper—whose situation in that case was not like that of the complainant in the present proceedings—was entitled to have the alleged judgment lien removed as a cloud upon his title without showing that the judgment was unjust, and without paying the same, nevertheless, the court strongly intimates that if Norton and Rennick were the complainants, a different rule would apply.

The appellee in the present case was not warranted in seeking the aid of chancery. He has had his full day in court, and it has been adjudged that he owes the judgment that he calls a cloud upon his title, and equity will not aid him to avoid the payment of his debt. The decree of the Superior Court of Cook county will be reversed and the cause remanded with directions to the chancellor to dismiss the bill of the appellee for want of equity.

*Reversed and remanded with directions.*

---

## Herman Cohn, Appellee, v. Flanagan & Biedenweg Company, Appellant.

### Gen. No. 20,989.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed December 8, 1915.

## Statement of the Case.

Action by Herman Cohn, plaintiff, against the Flanagan & Biedenweg Company, a corporation, defendant, in the Superior Court of Cook county, to recover on a written contract. From a judgment for plaintiff for $115, defendant appeals.

The defendant contracted with St. John's Church in Jacksonville, Florida, to furnish the windows for its church, and it then entered into the following contract with the plaintiff:

"THE FLANAGAN & BIEDENWEG COMPANY.
ARTISTS—STAINED GLASS
Chicago, March 2, 1906.

We, The Flanagan & Biedenweg Co., agree to pay to Herman Cohn Two Hundred Dollars ($200.00), for setting all of the glass in St. John's Church at Jacksonville, Fla., as per plans and specifications.

He, Herman Cohn, is to furnish all the necessary material excepting glass and lead, and to place same in position, including sixty-seven ventilators to the satisfaction of the committee. The work to be set in stone.

He is to use cement of the best quality obtainable in Jacksonville and the best grade of putty, if putty is selected by the committee and all work to be left clean and to the satisfaction of the church committee.

We, the Flanagan & Biedenweg Co., to be in no way held responsible for any expenses in the delay of shipment by the railroad company.

(Corporate Seal.)
THE FLANAGAN & BIEDENWEG Co.
Joseph E. Flanagan, President (Sign)
Herman Cohn                    (Sign)"

The plaintiff went to Jacksonville in March, 1906, and began work under the contract. On March 13th, after the plaintiff had completed about one-third of the work,

the committee of the said church complained that a certain portion of the glass then on the grounds was too dark in color and, according to the plaintiff, ordered him not to use the same.  The plaintiff immediately telegraphed the defendant as follows: ''Dark glass rejected, send other, can't wait.  Coming back.''  The next morning he received the following telegram from the defendant: ''Glass made special at factory from their sample, is correct.  Don't come back unless at your own cost till further orders.  Letter follows.''  On March 15, 1906, the plaintiff received from the defendant the following letter:

"March 13, 1906.

Mr. H. Cohn,
   c/o Bond & Bours Co.,
    Jacksonville, Fla.
Dear Sir:—

We received your telegram at 4:40 p. m. this day, the 13th, as follows: 'Dark glass rejected, send other, can't wait—coming back' and we wired you as follows: 'Glass made special at factory from their sample is correct.  Don't come back unless at your own cost till further orders.  Letter follows.'  We also telegraphed Bond & Bours Co. as follows: 'Cohn telegraphed glass rejected.  Too dark.  Glass made from your sample at factory.  Glass O. K.  Cannot accept rejection on that ground.  Letter follows.'

You have no authority to take it upon yourself to say anything about the glass being rejected.  You are only there for the purpose of setting the glass and if there is anything of this kind to be said it must come from the people who are buying the goods.  We cannot regard you but as a hired man setting the work, therefore, you should not take the responsibility of sending the telegram.

We wish to state that this glass was made special for this job from a sample received from Bond & Bours Co., Jacksonville, Fla., and was sent to the Pittsburgh Plate Glass Co. at Chicago who reserved the sample as it was sent in to the factory to be made

after sample, the glass was made after same and is the same commercial number as known throughout the U. S. and it is the same as sample now furnished for the windows in St. John's Church, Jacksonville, Fla. I am enclosing herewith a small piece taken from the sample which I shall use for reference showing the small piece of the glass that may be compared with their sample.

The only difference there might be is the question of thickness. We have compared it with our sample and find it O. K. also compared it with the Pittsburgh Plate Glass Co.'s sample and find it O. K. There must be some mistake. But it is well known that when cathedral glass is leaded in flat lead that the flat lead has the effect of giving it a darker appearance and it is darker in appearance in large sheets than it is in small sheets.

We do not propose to accept a rejection on technicalities, furthermore, we will not stand any expense of your returning unless the officials at Jacksonville give satisfactory reasons and refuse to allow you to set the work in place in writing, this will give us an opportunity for action, but do not take any verbal reasons for stopping this order, it must be in writing and in such clear language that there will be no question on your part about returning to Chicago. We hold that we have fulfilled our contract and the responsibility will have to develop on the other end as to rejection.

Very truly yours,
The Flanagan & Biedenweg Co.''

The glass objected to by the church authorities constituted only a small proportion of the total used in the work.

Immediately upon the receipt of this letter the plaintiff returned to Chicago, arriving there on March 16th. When he left Jacksonville, all the material necessary to complete the job to the satisfaction of the church people was on the ground. Telegrams and letters had passed between the defendant and the church people,

Cohn v. Flanagan & Biedenweg Co., 195 Ill. App. 491.

and the trouble in reference to the color of the glass was settled at once, and the church people requested the plaintiff to remain and finish the work. The plaintiff admitted that he knew that the defendant was financially responsible and well able to pay any damage that he might suffer by reason of the delay. When the plaintiff left Jacksonville, the defendant immediately sent an employee to complete the work covered by the contract with the plaintiff. This employee arrived in Jacksonville on March 17, 1906; found all the material necessary to complete the work on the ground, and the work was completed under his supervision. The defendant claimed that the work done by the plaintiff was very unsatisfactory, and that it expended, altogether, $398.19 in completing the work the plaintiff had contracted to perform, and that after allowing the plaintiff the amount of his contract, $200, there was a balance due the defendant of $198.19.

WILLIAM J. STAPLETON, for appellant.

No appearance for appellee.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

## Abstract of the Decision.

1. CONTRACTS, § 387*—*when evidence insufficient to sustain judgment.* In an action to recover on a contract for setting glass, evidence *held* insufficient to sustain a judgment for plaintiff, it being clearly apparent from the evidence that plaintiff abandoned the contract without just cause.

2. CONTRACTS, § 282*—*when contractor not entitled to abandon contract because of delay.* A contractor whose performance is slightly delayed by the fault of a contractee is not justified thereby in abandoning the contract.

3. CONTRACTS, § 282*—*when party not entitled to abandon contract because of neglect.* A slight or partial neglect by one of the parties to a contract, not defeating the object of the contract or rendering it unattainable, will not justify the other party in abandoning the agreement, for the reason that to justify such abandonment

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the failure of the opposite party must be total, and that for partial noncompliance in matters not necessarily of the first importance, the party injured must seek his remedy upon the contract.

## State Bank of Chicago et al., Appellees, v. John Christensen et al., on appeal of Board of Trustees of Park College, Appellant.

### Gen. No. 21,024.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed December 8, 1915.

### Statement of the Case.

Action by the State Bank of Chicago and others, plaintiffs, against John Christensen and others, defendants, in the Superior Court of Cook county, to foreclose a trust deed. From a decree dismissing the original bill and the cross-bill of defendant Park College, defendant Park College appeals.

The State Bank of Chicago as trustee of the trust created by the last will and testament of John R. Parsons, deceased, filed its bill in the Superior Court of Cook county, Illinois, to foreclose a trust deed given by John Christensen and Rosalba A., his wife, to secure the payment of their promissory note for three hundred dollars. Cross-bills were filed by Kathryn Crispe, John Christensen and Park College.

In the fall of 1907, plaintiff John Christensen secured a loan of three hundred dollars from Arthur B. Pease, and gave his note, dated November 20, 1907, for the amount. The note was secured by a trust deed on the home of Christensen at 639 Root street, Chicago. Pease afterwards sold the note and trust deed to a